Christian, J.
I dissent entirely from the opinion and judgment pronounced in these cases by the majority of the court, and from the whole course of reasoning so ably and ingeniously urged in support of them. And so confident do I feel that the view I have taken of the law is the correct one, that nothing less than the great respect I entertain for the ability and legal learning of my brethren who differ with me, could induce me even to doubt. I beg leave to state, as briefly as I can, the grounds and reasons for my opinion. I regard these cases as important, not on account of the interest to the parties concerned, but as regards the principle which I consider involved in and settled by the judgment of the court.
*812 These cases depend upon the proper construction to be given to the act of the 26th March 1842. The defendants were indicted for offences against the gaming laws. These offences were committed prior to the passage 0f the act 0f 20th March 1842. At the time they were committed, the punishment for them was a pecuniary fine of 20 dollars. .The act of 26th March 1842 is in these words: [Here the judge recited it.] Can any judgment for a fine be rendered against the defendants ? and if any, what, and under what law ? I maintain that no judgment can be rendered. None can be rendered for the fine of thirty dollars, as directed by the act of 26th March 1842, because that act, having passed since the offences were committed, is, as to all such cases, ex post facto, and hence to apply it to such cases would be contrary to the constitution. Nor can any judgment be rendered for the fine of twenty dollars'; because the act in force at the time the offences were committed, which imposed the fine of twenty dollars, is repealed by the act of 26lh March 1842. For although the act of March 1842 contains no clause of express repeal, it nevertheless operates an implied repeal of all previous laws relating to the same subject, so far as it conflicts or is inconsistent with them ; the principle being, that where there are two inconsistent statutes upon the same subject, the last statute repeals the former by implication, to the extent of such inconsistency. If authority should be required to sustain a principle so obviously just and right, I refer to Dvvarris on Statutes 672, 3. 6 Bac. Abr. 372, 3. 11 Rep. 63a. 8 East 580. 4 Burr. 2026. Leach’s Cr. Cas. 228.
The only remaining question, then, is whether the act of 26th March 1842 be inconsistent with the previous laws on the same subject. Can that act stand in harmony with the former statute, which for these offences imposed a fine of twenty dollars ? I humbly insist, that so far from being harmonious, the two statutes are di *813 rectly inconsistent and hostile. The act of the 26th J • . j March is so short, so plain, so simple, so direct, and the meaning of the legislative body so obvious, that argument cannot render it more clear, nor can melaphysics obscure it. It declares that “ in all recoveries hereafter had” &c. the fine imposed shall be thirty dollars, in lieu of the fine now imposed by law. These cases, it seems to my mind, are stated, argued, and concluded by answering two questions; 1st. when were the of-fences committed ? and 2. when were the recoveries had ? If the offences were committed before the act of March 1842, and the recoveries were after, the court can render no judgment for the fine. I have already shewn that where two statutes relating to the same subject are in hostility to each other, the last statute gives the law of the case, and, to the extent of the incompatibility, is regarded as impliedly repealing the first. So far as consequences are concerned, can it make any difference whether the repeal is express or implied ? I apprehend not. I can see no difference on principle, and if there be any authority, I beg to see it; I have never seen or heard of such. To prove, then, that if there had been-in the act of 26th March 1842 a clause repealing all acts coming within its purview, no judgment could have been rendered in these cases, I will refer to the following cases decided by the general court: Scutt's case, 2 Virg. Cas. 54. Attoo's case, 2 Virg. Cas. 382. and Leftwich’s case, 5 Rand. 657.—in all and each of which the proposition is distinctly announced and clearly settled, that where a new statute prescribes a new punishment for an offence previously punishable otherwise, and the new statute repeals all laws coming within its purview, but does not provide that offences committed before the operation of the new law shall be punished under the old, such repeal operates as a discharge of all such offenders. In Leflwich's case, the defendant was indicted for marrying his deceased wife’s sister. At the time of *814 the offence committed, the punishment prescribed by statute was separation of the parties. Before the trial, the legislature, by a new act, provided a different punishment, to wit, fine and imprisonment; and the new act contained a clause of repeal of all acts within its purview. The general court unanimously decided that no judgment could be rendered, either under the old act or the new. Scutt's case is still stronger. The defendant was indicted for malicious stabbing; the act being charged and proved to have been committed on the 29th of March 1817, at which time such offences were punishable under the act of 1803. The trial was had on the 17th of April 1817. On the 20th of February 1817, the legislature pa.ssed another act upon the subject of stabbing, commencing from and after the first day of April 1817, which, however, provided the same punishment for malicious stabbing as was prescribed by the act of 1S03. But the act of February 1817 contained a clause repealing all acts within its purview. The general court, with the able judge White at its head, unanimously decided that no judgment could be rendered against the accused. In Attoo's case, the accused, a free man of colour, was indicted on the 15tb of September 1823, for forgery. The offence was charged and proved to have been committed on the 10th May 1823, at which time it was punishable under the act of 1819, by confinement in the penitentiary. By an act passed the 21st of February 1823, which went into operation after the offence was committed, but before the indictment and trial, the punishment for the offence was changed to sale and transportation, and the act contained a clause of repeal, without making any provision for the prosecution of offences before committed. The court unanimously decided that no judgment could be rendered against the accused, and that he be acquitted and discharged.
*815 But the majority of this court rely upon Pegram's case, 1 Leigh 569. as authority against the views I take of the cases at bar, and as answering all the cases which have been cited before us on the effect of the repeal of statutes. Pegram’s case, properly understood, furnishes, as I humbly think, no authority whatever that militates against any principle for which I contend, or against any principle properly involved in the cases before us. What is that case? Pegram was indicted for keeping and exhibiting a faro bank table. The offence, at the time it was committed, was punishable under the act of 1822-3, by confinement in the common jail and by stripes. Pegram was not arrested and put upon his trial until December 1829. In the mean time, to wit, at the session of 1827-8, the legislature passed an act in which they declared, that whoever should thereafter he guilty of the said offence, should be punished by confinement in the county jail, and by fine of not less than 200 nor more than 800 dollars. This act contained no repealing clause. Pegram insisted that the act of 1822-3, which was in operation at the time his offence was charged to have been committed, was repealed by the act of 1827-8, because the latter act prescribed a new punishment. But the court decided that the act of 1822-3 was not repealed by the act of 1827-8, either expressly or impliedly. And why did they so decide ? Because the act of 1827-8, by its very letter, provided only for the case of those who should thereafter he guilty, leaving entirely intact the case of previous offenders. There was no express repeal, and no inconsistency to work an implied one. But suppose the legislature, instead of using the language “ whoever shall hereafter he guilty” &c. had said that in all judgments hereafter rendered against any person found guilty of keeping and exhibiting a faro bank table, the sentence shall be that the accused be hanged, in lieu of the punishment now prescribed; the case would be in principle precisely *816 like the cases at bar, and in such case, upon- the authorities cited, no judgment could be rendered: not the judgment of hanging, because it would be ex post facto; and by the plain terms of the supposed act, no other judgment could be rendered.
The majority of the court have also relied upon a decision made in England upon the statute of 29 Car. 2. ch. 3. I have not examined that case, but I see enough in the statute itself to satisfy me that the decision ought not to be regarded as of any authority or weight in cases like those now before us. That statute is one affecting contracts. To give here to such an act a construction depriving the party of his remedy, would be plainly in violation of the constitution of the United States, which declares that “ no state shall pass any law impairing the obligation of contracts.” And in this the constitution but affirms that great principle of the common law, under the influence of which the court, in the case referred to, very properly decided as it did.
Much has been said about the intention of the legislature, and it is insisted by the majority of the court, that the legislature could never have intended that offenders such as Wright and Pitman should go unpunished. It is sufficient to reply, ita lex scripta est. Where the language of the legislature is neither equivocal nor ambiguous, but short, plain, simple and positive, we are bound to give effect to it according to the obvious meaning, without looking to the consequences. This is both the proper and the only safe rule. If it be departed from, every thing is left in doubt and uncertainty ; men are set to guessing at the legislative meaning, and we may have as many different interpretations of an act, as there are judges whose duty it is to expound it. Suppose that in the cases of Scutt, Attoo and Leftwich, heretofore cited, the general court had resorted to such a mode of ascertaining the intention of the legislature; all must see at once that their judg *817 ment in each of those cases must have been the reverse of what it was. For they must have known that it was not the intention of the legislature, in enacting the several laws under which those cases were decided, to pass acts of amnesty and pardon for all who had previously been guilty of similar crimes, though that was the consequence of the court’s decision. It is the duty of the court to expound the statute as it is written, and if mischievous consequences follow, the fault is not theirs. The legislature will in all cases do as they have done in the present instance,—guard against the mischief by subsequent legislation. At the late session, they passed an act (Sess. Acts of 1842-3, p. 57. ch. 84.) remedying, as far as practicable, the mischief resulting from the act of the 26th March 1842, and thereby giving to the lastmentioned act a legislative construction very different from that given by this court; plainly shewing that they themselves did not understand the act as this court construed it. And I maintain, that admitting the fact that some mischief, or even very great mischief, may sometimes result from adhering strictly to the rule which I insist is the true one, such mischief is only as dust in the balance, compared to the evil that may result from the adoption of the principle which I think involved in the judgment of the court in the cases before us,—a principle by which the citizen is to be held amenable to laws that are ex post facto, and which weakens, if it does not cut asunder, the tenure by which we hold our property, our liberties, and our very lives.
The majority of the court, speaking of the act of 26th March 1842, have said, “ These are brief words, and not free from difficulty.” I think that if the difficulty were such as to create even doubt in the mind of the court as to the true construction of the act, the decision should have been in favour of the defendants.
*818 Upon the other question, I concur with the majority r . or the court.
In the foregoing opinion, judges Brown and Clopton COllCUr.
In Pitman’s case, judgment of circuit court reversed, and that of the court of hustings affirmed, with costs to the commonw’ealth of her defence in the circuit court.
In Wright’s case, judgment of circuit court reversed. “And this court proceeding to enter such judgment in the premises as the said circuit superior court ought to have rendered, it is farther considered that the said judgment of the court of hustings for the town of Fredericksburg be also reversed and annulled, and that the said Thomas Wright forfeit and pay to the commonwealth, instead of the fine of thirty dollars thereby imposed, a fine of twenty dollars only, and that he pay the costs of the prosecution in the said court of hustings, including a fee of twenty dollars to the attorney prosecuting in that court on behalf of the commonwealth.”